## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CATHERINE TOWN,

                Plaintiff,                              CASE NO. 12-CV-15310
                                                HONORABLE DENISE PAGE HOOD

v.

GENESEE COUNTY, and GENESEE
COUNTY EMPLOYEES' RETIREMENT
SYSTEM,

                Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT I [#16], GRANTING DEFENDANT GENESEE COUNTY EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR SUMMARY JUDGMENT [19], AND DISMISSING CASE

This matter involves an alleged improper denial of disability retirement benefits, violation of due process, and a claim for handicap discrimination. On September 10, 2013, a Stipulation and Order was entered dismissing Defendant Genesee County. **[Docket No. 23]** Now before the Court are Plaintiff's Motion for Summary Judgment Upon Count 1 **[Docket No. 16, Filed August 9, 2013]** and Defendant Genesee County Employees' Retirement System's Motion for Summary Judgment **[Docket No. 19, Filed August 16, 2013]**. For the reasons discussed

below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. This matter is **DISMISSED**.

## II. BACKGROUND

Plaintiff has brought suit against Genesee County (the "County"), her former employer. Plaintiff served the County from April 25, 1994, to July 27, 2010. In her final position as a Tax Foreclosure Specialist in the County's Treasurer's office, she regularly worked 60 to 80 hours per week. Plaintiff consistently received "excellent" performance evaluations. On July 28, 2010, Catherine Town was unable to continue working in her position due to what she alleges to be a disability.

Plaintiff submitted an application for disability retirement benefits to the Retirement Commission of the Genesee County Employees Retirement System (the "Commission") on July 22, 2010. The Retirement System is established under the authority of Section 12a of Public Act 156 of 1851, as amended (MCL § 46.12a), and administered in accordance with the provisions of the Genesee County Employees Retirement System Ordinance. The Retirement System is a qualified plan and trust under the applicable provisions of the Internal Revenue Code. It is a separate, legally distinct entity from the County of Genesee, and it is undisputed that the Commission is the entity responsible for determining whether

Plaintiff was eligible for retirement disability benefits.  The relevant Retirement Ordinance for the Genesee County Employee's Retirement System provides that:

> A Member, with 10 or more years of Credited Service, whom the Retirement Commission finds to be totally and permanently incapacitated for duty from any cause in the employ of his last Employer may be retired by the Commission upon application filed with the Commission by the Member or his department head: Provided, that after a medical examination of the Member, made by or under the direction of the medical director, the medical director certifies to the Retirement Commission (1) that the Member is mentally or physically totally incapacitated for duty in the employ of his last Employer, (2) that such incapacity will probably be permanent, and (3) that the Member should be retired, Upon this Retirement he shall receive a Retirement Allowance provided in Section 30.  In addition to the above requirements, the Member must apply for Social Security disability benefits and properly notify the Retirement Commission regarding the results of said application.

**[Docket No. 19, Pg ID 2297]**

On April 20, 2011, The Hartford Insurance Company notified Plaintiff that her claim for Long Term Disability benefits had been approved.  On March 30, 2012, the Social Security Administration notified Plaintiff that her claim for Social Security Disability benefits had been approved.  In accordance with the Genesee County Employee's Retirement System ordinance, Plaintiff was examined to

determine whether she was mentally or physically "totally and permanently incapacitated for duty" and whether she should be retired. The Retirement Commission determined that Plaintiff was physically capable of resuming employment in the same or similar job classification in which that she had been previously employed and denied Plaintiff's request for non-duty disability retirement benefits. Plaintiff was examined four separate times before she was denied benefits.

### A.    Evaluation by Doctor W.J. Boike

On July 29, 2010, the Retirement Commission's Medical Director designated W.J. Boike, MD, a neurologist as Plaintiff's examining physician based on the alleged disability contained in her July 22, 2010 application of "Aphasia". It is undisputed that Dr. Boike performed a physical examination of the Plaintiff and reviewed the medical records she provided to the Retirement System in support of her claimed disability. Dr. Boike concluded that the Plaintiff was not mentally or physically totally incapacitated for duty in the employ of her last employer.

In his independent medical evaluation, Dr. Boike discussed Plaintiff's medical history and her assertion that it was her belief that the thinking difficulties that she had started after a heart attack she suffered in the past. However, Dr.

4

Boike determined that Plaintiff's neurological exam was "absolutely normal." **[Docket No. 12, Pg ID 1222]**  Dr. Boike stated that Plaintiff "has absolutely no basis whatsoever to suspect or diagnose any type of neurodegenerative disorder [a]ffecting language or cognition." **[Id.]**  Further, Dr. Boike stated that "Any diagnosis rendered at this point (by Dr. Weiss) is on the basis of this patient's subjective complaints alone." **[Id.]**  Dr. Boike did "not believe [Plaintiff] require[d] additional evaluation" nor "neuropsychological testing or brain CT or MRI scanning, or laboratory evaluation for cognitive difficulties."  Dr. Boike concluded that Plaintiff made a "a personal decision to retire" and there was no basis to determine that she was "disabled."

Plaintiff's application for a non-duty disability retirement was discussed in a closed session at the Commission's September 13, 2010 meeting.  Plaintiff participated and was told the results of her evaluation.  Defendants contend that Plaintiff expressed her dissatisfaction with Dr. Boike's examination and expertise and, at her request, the Retirement Commission agreed to send her to a second neurologist.  Plaintiff argues that Plaintiff was sent to a second neurologist because Defendants' attorney did not believe the evaluation was complete and reliable.  The decision on Plaintiff's application was tabled.

In a letter dated November 23, 2010, Dr. Boike noted that he had been sent additional medical records to review following his evaluation to indicate whether his review of the records "alter[ed] [his] previously expressed opinions concerning her status." **[Admin. Rec.; Ex. 14]** Dr. Boike reviewed records from the University of Michigan and Genesys Regional Medical Center.  Dr. Boike concluded that he did "not believe that [Plaintiff] ha[d] either primarily progressive aphasia or a neurodegenerative disorder." **[Id.]** He further stated that "Unless [Plaintiff] ha[d] some new neurological deficit that developed subsequent to [his] evaluation on July 29, 2010, . . . [his] review of the[ ] additional records in no way alter[ed] the opinions" that he had previously expressed. **[Id.]**

In a letter on July 18, 2011, Dr. Boike noted that he had been asked to reevaluate Plaintiff an additional time based on new medical record information. **[Admin. Rec.; Ex. 23]** He noted that he reviewed social worker Judith Ingram's report and her opinion that she felt Plaintiff was unable to perform her duties.  Dr. Boike concluded that his review of the additional documents did not change the opinions he previously expressed in his initial reports or addendums.

### B.    Evaluation by Doctor Gary Trock

On October 8, 2011, Plaintiff was examined by Gary Trock, M.D, a neurologist.  Dr. Trock reviewed Plaintiff's medical records, which included notes

from her previous neurological exams.  **[Admin. Rec.; Ex. 11]**  It is Dr. Trock's impression that there was "absolutely no evidence Ms. Town ha[d] primary progressive aphasia."  Dr. Trock noted that Plaintiff could write a sentence and read and that though she scored low on a mini mental status test, Dr. Trock did not believe it was the result of a "valid attempt."  Dr. Trock concluded that, at the time of his examination and based on his exam findings, he "would not consider Ms. Town disabled from a physical or mental standpoint."  **[Docket No. 12, Pg ID 1351]**  In Dr. Trock's opinion, Plaintiff did "not have a work related disorder, and she [could] return to her former job." **[Id.]**

On October 11, 2010, the Retirement Commission met again and considered Plaintiff's application for disability retirement benefits.  At that time, the Retirement Commission had received an initial response from Dr. Trock, which provided his opinion that Plaintiff was not mentally or physically totally incapacitated for duty.  Defendants contend that Plaintiff again objected to the choice of physician and questioned Dr. Trock's specialty, that being in pediatric neurology.  Plaintiff argues that the Commission's attorney again found the report to be lacking.  The Retirement Commission decided to table its decision until it received Dr. Trock's full medical report.

In a letter dated November 15, 2010, Dr. Trock stated that following his initial evaluation, he was asked to "review additional records and provide an addendum." **[Admin. Rec.; Ex. 14]** Dr Trock noted various medical visits that Plaintiff had at the Genesys Regional Medical Center Emergency Room, Michigan Eye Institute, and the University of Michigan Neurology Department.  Dr. Trock concluded that "[t]he records are provide [did] not change [his] opinion." **[Id.]** He again stated that Plaintiff "did not have primary progressive aphasia." **[Id.]**

In its meeting on November 18, 2010, the Retirement Commission considered Dr. Trock's complete medical report.  Plaintiff again expressed her dissatisfaction Dr. Trock's examination in light of his expertise as well as other alleged issues of bias.[1]   Relying on the opinions of Dr. Boike and Dr. Trock, the Commission told Plaintiff that their "hands are tied" and denied Plaintiff's request for a disability retirement benefits. **[Admin. Rec.; Ex. 13]**

In a letter dated June 30, 2011, Dr. Trock noted that he was again asked to re-evaluate Plaintiff based on new and additional medical records. **[Admin. Rec.;**

---

[1]  In a letter dated October 18, 2010, Dr. Trock notes that he is a trained neurologist "with added competence in child neurology." **[Admin. Rec.; Ex. 11]** He states that he is trained and certified to practice both pediatric and general neurology.  He again reiterated his medical opinion that "there was no evidence during the visit of primary progressive aphasia." **[Id.]**

8

**Ex. 23]** Dr. Trock noted records from a Dr. Jae Kim, a psychiatrist who determined that Plaintiff was unable to work because of "severe depression." **[Id.]** Dr. Trock also referenced the findings of psychotherapist Judith Ingram who opined that Plaintiff could not perform the duties involved in land foreclosure because of "the inability to stay focused in complex tasks, deal with emotional clients, remember rules, policies, and regulations, and organize diverse documents" which she attributed to "severe depression and ongoing stress." **[Id.]** Dr. Trock asserted that he was specifically asked to determine if Plaintiff had primary progressive aphasia, "which she clearly did not."  He noted that he could not agree or disagree with the findings of the depression because he was neither a psychiatrist of psychologist and "would defer regarding any psychiatric disorders or antiphospholipid antibody syndrome." **[Id.]**

### C.    Plaintiff's Written Appeal

Following the Commission's denial of benefits, Plaintiff filed a written appeal of the Commission's decision and requested a hearing. **[Admin. Rec.; Ex. 15]**  Plaintiff's hearing was initially scheduled to occur at the Retirement Commission's February 14, 2011, **[Admin. Rec.; Ex. 16]** meeting but the hearing was adjourned to allow Plaintiff's new counsel to familiarize himself Plaintiff's case.  **[Admin. Rec.; Ex. 17]**  The hearing was held during the Commission's June

9

20, 2011, meeting.  At this meeting, Plaintiff's counsel provided the Commission with new medical opinions regarding Plaintiff's disability and notified the Commission that, after more examinations, it was believed that Plaintiff did not suffer from "Aphasia" but instead suffered from "Hughes Syndrome."  Plaintiff also presented the Commission a sworn statement.

This additional information was presented to the Medical Director for him to review and determine whether denial of Plaintiff's benefits needed to be reconsidered.  Upon review of the additional medical information, the Medical Director, determined that there was reason to believe that Plaintiff may have an illness other than the one listed in her application (now Hughes Syndrome), warranting re-evaluation.  Plaintiff's attorney requested that "the Retirement System consider whether there [was] a need for review by a doctor capable of rendering an opinion" regarding Plaintiff's alleged psychiatric and antiphospholipid antibody syndrome conditions.  **[Admin. Rec.; Ex. 24]**

In response to this request, the Retirement Services Administrator, Debra Tocarchick, contacted Clarence Dixon, the Practice Manager of Consulting Physicians to ask if he could "recommend a physician(s) and proceed on that course[.]"  **[Admin. Rec.; Ex. 25]** Mr. Dixon suggested that the Commission consider referring Plaintiff to a neuropsychologist.  **[Id.]** The Commission

10

determined that though it believed that Plaintiff had been "afforded the ability to be extremely involved in the physician selection process," and that it had "extended every courtesy possible" to Plaintiff, it was its recommendation that Plaintiff move forward with the additional testing.  **[Admin. Rec.; Ex. 26**] Plaintiff voiced her concern that the tests "would simply be a repeat of what had already taken place" but both she and her attorney "concurred" with moving forward with the testing. **[Id.]**

### D.   Evaluation by Neuropsychologist Christian Schutte

On September 24, 2011, Plaintiff was evaluated by neuropsychologist Christian Schutte.   Dr. Schutte stated that Plaintiff was referred for a "neuropsychological examination to assess her cognitive and emotional functioning in relation to a long-term disability claim in which she reported significant dysfunction with her cognition and physical functioning associated with her health condition." **[Admin. Rec.; Ex. 28]** Schutte reviewed Plaintiff's medical history as well as the independent medical examinations that had been done. Schutte administered various examinations and determined that it was "unlikey that [Plaintiff] was incapacitated." **[Id.]** Schutte did not make a definitive determination as to whether Plaintiff could return to work, opining that "[i]t may be difficult for her to return to her previous employment at this time, as she apparently found it

11

very emotionally taxing, but employment that is less psychiatrically distressing may be more realistic for her and actually assist with improving her symptoms." **[Id.]** Schutte concluded that Plaintiff should not be retired though "she may have difficulty with performing her previous employment at the intensity she indicated in her treatment records was asked of her" and that her "duties may be reconsidered after she ha[d] been successfully treated." **[Id]**

At the Commission's November 14, 2011 meeting, Schutte's report was discussed. **[Admin. Rec.; Ex. 30]** The Commission determined that a copy of the report with a request that there be clarification as to whether there can be an accommodation of a position at Genesee County be sent to the employer. **[Id.]** The results were to be discussed at the next meeting.

### E.    Events Following Schutte's Evaluation

A letter was sent to the Commission stating that because Plaintiff had not requested an accommodation under the American with Disabilities Act, it was "under no obligation to consider an accommodation." **[Admin. Rec.; Ex. 32]** However, the Commission was also informed that "no other job exist[ed] in her office that would provide a less 'psychiatrically taxing' or less 'psychologically overwhelming' atmosphere." **[Id.]** Further, it was noted that "even if a request

12

were submitted and considered, there [was] no employment in another capacity to offer as an accommodation suitable" for Plaintiff's needs. **[Id.]**

The Commission held its next meeting on December 12, 2011. **[Admin. Rec.; Ex. 33]** The issue of Plaintiff's benefits request was raised and discussed. Plaintiff's attorney had, before hand, notified Ms. Tocorchick that he and his client would not attend. The Commission addressed the letter regarding the accommodation and stated:

> Mr. VanOverbeke . . . added that if the letter from the Employer had stated that there is absolutely no employment in the County that this person can do because of their psychiatric condition, and in light of that, recommend granting the disability retirement, it would be an entirely different situation . The correspondence received from the Employer is not that specific. He reminded the Commission that the burden of proof is on the claimant to establish the disability—not on this body to establish that someone is not disabled.

**[Admin. Rec.; Ex. 33]**

In a letter dated December 27, 2011, Plaintiff's counsel contacted Ms. Tocarchick to notify her that Plaintiff requested a rehearing on her claim for benefits for various reasons. **[Admin. Rec.; 35]** Plaintiff argued that she questioned whether Schutte "had the background to conduct an examination on her outstanding issues." **[Id.]** Plaintiff also questioned Schutte's finding deeming it based on "some hypothetical job that does not exist" because the employer had

notified the commission that no job existed where they could accommodate Plaintiff's alleged condition. **[Id.]** Plaintiff counsel also updated the Commission on (1) Plaintiff's Notice of Disapproval of Claim from the Social Security Administration and (2) Plaintiff's Request for Hearing by an Administrative Law Judge. **[Id.]**

The Commission's next meeting relevant to this matter was held on February 6, 2012. **[Admin. Rec.; Ex. 37]** At this meeting, it was announced that the Commission's final determination as to Plaintiff's appeal for benefits was denied on December 12, 2011.  A copy of the written denial was sent to Plaintiff. **[Id.]** On February 21, 2012, through letter to the Commission by Plaintiff's Counsel, Plaintiff renewed her request for a rehearing on her claim. **[Admin. Rec.; Ex., 38]** In addition to her previous arguments, Plaintiff contended, among other things, that (1) "No doctor has made a determination that Member Catherine Town is able to perform 'in the same or similar position the Member held at the time of disability;'" (2) "The Retirement Board's findings of fact ignores, and fails to mention, that every doctor has found Catherine Town totally disabled (including Genesee County's own doctor and independent doctors for Hartford Insurance Company), with the sole exception of the doctors assigned by Consulting Physicians, PC on behalf of the Retirement Board;" and (3) "The Retirement

14

Board's decision to deny Catherine Town's application without a 'mental' examination was improper." **[Admin. Rec.; Ex. 38]** In the Commission's March 26, 2012, meeting, it was determined on the advice of the Commission's legal counsel to allow Plaintiff to have a rehearing on her claim for benefits. **[Admin. Rec.; Ex. 39]** Additionally, the Commission was provided with a Fully Favorable March 30, 2012, Decision from the Social Security Administration as well as a vocational assessment by JMD Rehabilitation and medical notes from Brenda Fortunate, D.O. in which she determined that Plaintiff was unable to perform her job. **[Admin. Rec.; Ex. 40]** Diagnostic testing also showed the possibility of Hughes Syndrome. **[Id.]** This information was also forwarded to Mr. Dixon, the Practice Manager for Consulting Physicians.

## F.  Reevaluation By Schutte

In a letter dated May 18, 2012, Schutte provided a supplemental report. This report was based on additional information that he had received to review including a document from a Mr. Phillips from the Hartford, statements from Dr. Kim and Ms. Ingram, a document from the Social Security Administration dated March 30, 2012, a vocational assessment completed by Ms. Turecki, treatment records from Dr. Fortunate ranging from April 2009-October 2011, an evaluation

at Michigan Eye Institute dated October 12, 2010, and a treatment record from Dr.

Weber dated June 27, 2009. **[Admin. Rec.; Ex. 41]** Schutte concluded:

> From a neuropsychological point of view there was no evidence of aphasia, cognitive deficits and Ms. Town denied symptoms of Major Depression or Generalized Anxiety. Thus, review of additional records does not change the opinion of the September 24, 2011 neuropsychological evaluation, as there were no additional records to support the difficulties identified as disabling, including "severe depression", Generalized Anxiety or cognitive deficits from a neuropsychological point of view.

**[Id.]** Plaintiff objected to this determination arguing that Schutte's opinion was

based on incomplete information (him not knowing about the "no other jobs exist"

finding) and, furthermore, was not a correct "mental" evaluation. **[Admin. Rec.;**

**Ex. 42]** In the meantime, the Commission scheduled Plaintiff to visit a Dr.

Hammoud, an internist, regarding her possible Hughes Syndrome diagnosis. **[Id.]**

### G. Evaluation by Doctor Jamal Hammoud

On July 23, 2012, Plaintiff was evaluated by Dr. Jamal Hammoud, and

internist and endocrinologist based on her claim of Hughes Syndrome. **[Admin.**

**Rec.; Ex. 42]** Dr. Hammoud reviewed Plaintiff's medical records as well as the

results of the previous independent evaluations. Dr. Hammoud concluded that

"[b]ased on [his] evaluation and review of records, [he did] not see any medical or

16

endocrine disorder that would prevent [Plaintiff] from working." **[Id.]**  Dr. Hammoud noted that Plaintiff was "anxious" and stated that he agreed that she had "generalized anxiety . . . [t]hat [would] prevent her from working in a stressful job such as a foreclosure specialist." **[Id.]**  He opined that "[i]f there [was] any other job not so stressful, she could handle it, but based on the description of the job that was given to [him] in writing and from the patient," Dr. Hammoud did "not think she [could] perform her job and she should actually retire." **[Id.]** Though Dr. Hammoud did not find any medical or endocrine disorder that would prevent Plaintiff from working, his signature on the Summary of Medical Determination stated that he found her to be mentally and physically totally incapacitated for duty. **[Id.]**

## H.    Final Determination as to Benefits

The Commission held a closed session on September 17, 2012. **[Admin. Rec.; Ex. 45]** It was stated that the concern of the Commission was to ensure that Plaintiff "was being evaluated by the proper physician." **[Id.]**  It was noted that at Plaintiff's request, she was sent to Dr. Hammoud for evaluation with regard to Hughes Syndrome and that Dr. Hammoud did not base his opinion on a diagnosis of Hughes Syndrome but on anxiety and the stress level of the position.  It was further stated that Dr. Hammoud failed to indicate on what basis he feels she

17

should be retired and that Dr. Hammoud, an endocrinologist and internist, made findings of a "psychological nature." The Commission noted that Plaintiff had already seen a neuropsychologist who found "no disability."

On October 22, 2012, the Commission held its next meeting and the issue of Plaintiff's benefit request was raised. **[Admin. Rec.' Ex. 46]** Plaintiff's counsel addressed the Commission on Plaintiff's behalf and noted that the most recent report determined that Plaintiff was in fact disabled. Plaintiff's employer also spoke on Plaintiff's behalf. The Commission noted its ability to view each assessment, even the last one, with the same weight as it does the others. The Commission also discussed the physicians and their findings as well as the Commission's willingness to allow Plaintiff to be seen by various doctors due to the issues she raised regarding the sufficiency of her first evaluation. Ultimately, the Commission reaffirmed its denial of Plaintiff's disability retirement benefits. A final report was sent to Plaintiff on October 26, 2012. **[Admin. Rec.; Ex. 47]**

## II. ANALYSIS

In her Complaint, Plaintiff claims that Defendant Genesee County discriminated against her in violation of the American with Disabilities Act, 42 U.S.C § 12101 et seq., and the Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101, et seq., by refusing to allow her to return to work and by "maintaining

18

standards, criteria, or methods of administration that have the effect of discriminating on the basis of disability." **[Docket No. 1, Pg ID 21, 22]** Specifically, Plaintiff's Complaint includes a claim for: Improper Denial of Disability Retirement Benefits (Count I); Violation of Due Process (Count II); and Handicap Discrimination (Count III). Plaintiff requests that this Court enter Judgment in her favor by issuing an order: (1) that the Genesee County cease applying contradictory factual findings to Catherine Town; (2) that Genesee Country provide a procedure for resolving contradictory factual positions taken by Genesee County; (3) that the Genesee County Employee's Retirement Commission consider all relevant evidence presented in regard to Catherine Town's application for disability retirement benefits; (4) that Genesee County be required to reinstate her employment effective July 28, 2010, and by awarding her reasonable attorney fees, litigation expenses, court costs, and statutory interest.

In the instant Motion for Summary Judgment, Plaintiff argues that she is entitled to relief on Count I of her Complaint, Improper Denial of Disability Retirement Benefits, because Plaintiff "was never officially examined from a mental perspective." **[Docket No. 16, Pg ID 2032]** Plaintiff contends that Drs. Boike and Trock "reported that they were unqualified and unable to render an opinion from a mental perspective" and that the Retirement Commission

19

"arbitrarily refused to permit any examination of [Plaintiff] from a purely mental perspective . . . [i]n spite of [her] repeated requests, and in spite of the reports from Medical Directors Boike and Trock (that [Plaintiff's] condition would best be examined by a psychologist or psychiatrist)." **[Id. at 2032-33]** Plaintiff further argues that the Commission "arbitrarily rejected" Dr. Hammoud's finding that Plaintiff suffered from a mental condition "because Hammoud had been asked to examine [Plaintiff] for an 'endocrine disorder,' because he was not supposed to notice [Plaintiff's] mental condition, and because his qualifications as an MD (as required by the Retirement Ordinance), were somehow less creditable than the qualifications of a PhD [Schutte]." **[Id.]** Plaintiff asserts that she meets each of the requirements for a disability retirement pension under the Genesee County Retirement Ordinance having worked over 10 years, applied for Social Security benefits, and receiving a determination from a Medical Director for the Defendant Retirement System (Hammoud Jamal, MD) certifying that she is disabled.

In its Motion for Summary Judgment, Defendant Genesee County Employees Retirement System argues that it is entitled to relief because this Court "may not substitute its judgment or discretion for that of a pension board and may not reverse or disturb a pension board's decision except for want of

20

jurisdiction, fraud, bad faith, abuse of discretion or arbitrariness." **[Docket No. 19, Pg ID 2246]** Defendant asserts that in this case, Plaintiff has failed to plead that the Retirement Commission's decision was "without jurisdiction, based upon fraud, bad faith, was an abuse of discretion, or arbitrary." **[Id.]** Defendant states that the Retirement Commission's decision to deny Plaintiff's request for benefits "was based upon competent, material and substantial evidence on the record as a whole, and was made in accordance with the provisions of the Retirement System and applicable law." **[Id.]** Defendant argues that there is no genuine issue of material fact and the Retirement System is entitled to judgment as a matter of law." **[Id. at 2247]**

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light

most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

First, the Court notes that Plaintiff was an employee of Genesee County and, as such, was covered under a governmental plan. This plan under the Genesee

22

County Employees' Retirement System is not subject to Title I of ERISA and its enforcement provisions.   *See* 29 U.S.C. §1003(b)(1) ("The provisions of this subchapter shall not apply to any employee benefit plan if . . . such plan is a governmental plan.").   Defendant's decision to deny benefits is reviewed as an administrative appeal upon motions for summary judgment.   *See Germond v. Lenawee Cnty. Bd. of Comm'rs Ret. Income Plan*, 250238, 2005 WL 900553 (Mich. Ct. App. Apr. 19, 2005) ("Plaintiff's private (contractual) right to pension benefits was adequate to invoke an administrative standard of review.") (citing Const 1963, art 6, § 28; *Martin v. Stine*, 214 Mich. App 403; 542 NW2d 884 (1985)).   The determination as to whether Plaintiff was wrongfully denied  benefits from the Retirement System is determined under Michigan law.

It is clear that based on the Retirement Ordinance for the Genesee County Employee's Retirement System, in order to qualify for retirement benefits, Plaintiff needed to have (1) been a member with 10 or more years of Credited Service, and (2) the Retirement Commission had to have found that she was "totally and permanently incapacitated for duty from any cause in the employ of his last Employer."   Further, only after a medical examination of the Member, made by or under the direction of the medical director, certified to the Retirement Commission that she was (1) mentally or physically totally incapacitated for duty in the employ

23

of his last Employer, (2) that such incapacity will probably be permanent, and (3) that the Member should be retired, would she receive benefits. **[Docket No. 19, Pg ID 2297]** It is undisputed that Plaintiff had been an employee of Genesee county for the requisite ten years.  It is also undisputed that Plaintiff was evaluated by medical directors to determine if she was mentally of physically totally incapacitated.   What is in dispute, however, is whether, based on the four evaluations before the Court, the Commission erred in determining to deny Plaintiff benefits.

The Court notes that a final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record.  Const 1963, art 6, § 28; MCL 24.306(1)(d).2. "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence."  *St. Clair Intermediate School Dist. v. Intermediate Ed. Ass'n/Michigan Ed. Ass'n*, 218 Mich. App. 734, 736, 555 N.W.2d 267 (1996).  If there is sufficient evidence, the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result.  *Black v. Dep't of Social Services*, 195 Mich. App. 27, 30, 489 N.W.2d 493 (1992).  With

regard to whether a decision is arbitrary or capricious, the Michigan Court of

Appeals in *Romulus v. Dep't of Environmental Quality*, 260 Mich. App. 54, 678

N.W.2d 444 (2003), stated:

> To determine whether an agency's decision is "arbitrary,"
> the circuit court must determine if it is "without adequate
> determining principle [,] . . . fixed or arrived at through
> an exercise of will or by caprice, without consideration or
> adjustment with reference to principles, circumstances, or
> significance, . . . decisive but unreasoned." *St. Louis v.*
> *Michigan Underground Storage Tank Financial*
> *Assurance Policy Bd.*, 215 Mich. App. 69, 75, 544
> N.W.2d 705 (1996) (quoting *United States v. Carmack*,
> 329 U.S. 230, 243 (1946)*; Bundo v. Walled Lake*, 395
> Mich. 679, 703 n.17, 238 N.W.2d 154 (1976)).
> "Capricious" has been defined as: "Apt to change
> suddenly; freakish; whimsical; humorsome." *St Louis*,
> 215 Mich. App at 75, 544 N.W.2d 705 (quoting
> *Carmack*, 329 U.S. at 243; *Bundo*, 395 Mich. at 703 n.17,
> 238 N.W.2d 15).

*Id.* at 63–64.

In reviewing whether an agency's decision was supported by competent,

material, and substantial evidence on the whole record, a court must review the

entire record.  *Great Lakes Sales, Inc. v. State Tax Comm.*, 194 Mich. App. 271,

280, 486 N.W.2d 367 (1992).  "Such review must be undertaken with considerable

sensitivity in order that the courts accord due deference to administrative expertise

and not invade the province of exclusive administrative fact-finding by displacing

an agency's choice between two reasonably differing views." *Michigan Employment Relations Comm. v. Detroit Symphony Orchestra, Inc*., 393 Mich. 116, 124, 223 N.W.2d 283 (1974). An agency's findings of fact are afforded deference, particularly with regard to witness credibility and evidentiary questions, *see THM, Ltd. v. Comm'r of Ins.*, 176 Mich. App. 772, 776, 440 N.W.2d 85 (1989), and it is not a reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of witnesses. *Arndt v. Dep't of Licensing*, 147 Mich. App. 97, 101, 383 N.W.2d 136 (1985).

Reviewing the record before it, this Court determines that the Commission's decision to deny Plaintiff disability retirement benefits was supported by competent, material, and substantial evidence on the whole record and not arbitrary or capricious as Plaintiff suggests. The Court notes that Plaintiff first submitted an application to the board alleging that she suffered from "Aphasia." Plaintiff was seen by two doctors, Doctor Boike and Doctor Trock, as well as Neuropsychologist Christian Schutte who all determined that Plaintiff did not suffer from aphasia. The Commission allowed Plaintiff to be examined by numerous professionals on the alleged aphasia disability and it was determined that she was not disabled, at least as it pertained to that condition.

26

The Court is unpersuaded by Plaintiff's argument that Schutte's evaluation was without merit or that it was not a "mental" evaluation.  Plaintiff argues that her evaluations by Drs. Boike and Trock were lacking and that her condition "would best be examined by a psychologist or psychiatrist."  **[Docket No. 16, Pg ID 2032-33]** The Commission referred Plaintiff to Christian Schutte, a neuropsychologist, to determine whether Plaintiff was either mentally or physically totally incapacitated. Schutte determined that Plaintiff was not incapacitated and that she should not be retired. **[Admin. Rec.; Ex. 28]** While Plaintiff argues that Schutte's findings are unreliable based him not being a medical doctor, Plaintiff attempts to rely on Schutte's determination that she "*may* have difficulty with performing her previous employment at the intensity she described" as a basis to claim that she should have been deemed incapacitated.

Plaintiff also argues that the board should have provided Schutte with letter which stated that her employer had no available less taxing positions.  Even assuming without deciding that it was error to not provide Schutte with the information, the Court is satisfied that on the entire record before it, the Commission had adequate evidence that Plaintiff did not suffer from the alleged disability of aphasia and therefore was not disabled, requiring any sort of accommodations.  Additionally, the Court is not persuaded that Plaintiff has raised

a question of material fact as to whether she in fact suffers from aphasia or any disability that neuropsychologist Schutte was directed to evaluate her for.

As to Plaintiff's claim that the Commission "arbitrarily rejected" Dr. Hammoud's finding that Plaintiff suffered from a mental condition, the Court notes that Dr. Hammoud was directed to evaluate Plaintiff for Hughes Syndrome, an antiphospholipid syndrome for which it believed Hammoud had expertise. Dr. Hammoud determined that "[b]ased on [his] evaluation and review of records, [he did] not see any medical or endocrine disorder that would prevent [Plaintiff] from working." **[Admin. Rec.; Ex. 42]** Though he also opined that Plaintiff suffered from "anxiety," there is no information in the record before the Court that the Commission acted arbitrarily or capriciously in deciding to give that determination little to no weight. Dr. Hammoud is not a psychologist or psychiatrist and, as Plaintiff has noted, Plaintiff's mental condition "would best be examined by a psychologist or psychiatrist." Further, Plaintiff did not present anxiety or depression as her causes of disability. Although the Commission determination that Plaintiff was not permanently disabled was in conflict with the evidence presented by her treating physicians, it is not a reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of witnesses. *Arndt*, 147 Mich. App. at 101, 383 N.W.2d 136.

28

## III. CONCLUSION

The Court finds that the Commission was not arbitrary nor capricious in its decision to deny Plaintiff disability retirement benefits based on the full record. Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED**. Accordingly, for the reasons set forth above,

**IT IS SO ORDERED** that Plaintiff's Motion for Summary Judgment Upon Count 1 **[Docket No. 16, Filed August 9, 2013]** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Genesee County Employees' Retirement System's Motion for Summary Judgment **[Docket No. 19, Filed August 16, 2013]** is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED**.

**IT IS SO ORDERED**.

s/Denise Page Hood
Denise Page Hood
UNITED STATES DISTRICT JUDGE

Dated: March 31, 2014

29

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 31, 2014, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager, (313) 234-5165